(No. 40572.—

VIOLA LEWIS, Widow of Frank A. Lewis, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ALTON BOX BOARD COMPANY, Appellee.)

*Opinion filed November 30, 1967.*

ARMBRUSTER & DIAZ, of Alton, (ROSS ARMBRUSTER, of counsel,) for appellant.

THOMAS Q. KEEFE, of East St. Louis, for appellee.

Mr. JUSTICE WARD delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Madison County upholding the Industrial Commission's denial of the petitioner's claim for compensation under the Workman's Occupational Diseases Act. The petitioner, Viola Lewis, urges that compensation should have been awarded, maintaining that the evidence she presented established a direct causal connection between the conditions of her deceased husband's employment and his contraction of the disabling disease of emphysema from which he allegedly died.

The petitioner's husband, Frank Lewis, was employed by the Alton Box Board Company for 21 years. During this time his duties changed periodically. He worked first as a paper sorter. Following that, he worked for a number of years in the beater room department, initially trucking paper, and in later years opening bales and feeding wastepaper into the various beaters. The decedent in the performance of these duties was exposed to dust which came from wastepaper and various types of straw. The last ten years of his employment were spent as a refinery operator which involved a process of washing straw and wood. This assignment was performed in a dust-free area. However,

Lewis often was required to work under hoods used to cover vats. In so working, he would inhale vapors of steam and various chemicals, including citrate bicarbon and caustic soda.

Lewis was last employed by the Alton Box Board Company in January or February, 1962. In December, 1962, he was hospitalized in St. Louis, Missouri, for 11 days because of chronic obstructive emphysema and other medical complaints. He died on July 2, 1964, at age 65, apparently from coronary thrombosis. It does not appear that he was ever employed after leaving the Alton Company.

The record shows that Lewis had been experiencing difficulties in breathing at least as early as 1959. Additionally, the petitioner, Viola Lewis, testified that her husband coughed frequently during his last years, that he had been an out-patient at the hospital clinic from the time of his hospitalization in December, 1962, until his death, and that in his last year he could walk only a short distance before becoming out of breath.

None of the physicians who had examined and treated the petitioner's husband during and subsequent to his hospitalization in December, 1962, could be located, so that they could testify, the petitioner stated. Drs. Francis Lamb and W. W. Billings, who testified for the petitioner, had never examined the petitioner's husband. Dr. Lamb, a chest surgeon, testified on direct examination, in response to a hypothetical question, that it is not yet known whether continued inhalation of atmospheric impurities, such as were here, cause emphysema, and that he was not certain whether such inhalation would aggravate a pre-existing emphysematous condition. On cross-examination, Dr. Lamb testified that emphysema may arise from a number of causes, known and unknown, and it is found in members of the general public, regardless of environment or employment. Dr. Billings had considerable experience with respira-

tory diseases prior to his retirement from practice in December, 1961. He testified that emphysema often causes coronary thrombosis, resulting in death. Dr. Billings further testified, in response to a hypothetical question posed by petitioner's attorney, that continued inhalation of foreign bodies, such as were here, could contribute to and cause aggravation of an emphysematous lung. He also testified that emphysema is not found in females to the extent found in males employed in industries where they are exposed to dust and other atmospheric pollutants. Under cross-examination, Dr. Billings stated that he did not know of the concentration of the irritants to which Lewis had been exposed. Too, he testified that the irritants involved might affect some, but not all persons.

Section 1(d) of the Workmen's Occupational Diseases Act provides, insofar as is pertinent here, that "the term 'Occupational Disease' means a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where the said diseases follow as an incident of an occupational disease as defined in this Section.

"A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind, upon consideration of all the circumstances, a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment." Ill. Rev. Stat. 1963, chap. 48, par. 172.36(d).

The arbitrator found that the petitioner had failed to prove that the decedent, Frank Lewis, had been exposed to

the hazards of an "occupational disease." The Commission sustained and adopted this decision, and the circuit court affirmed.

It is the province of the Industrial Commission to determine the facts and to draw reasonable inferences and conclusions from competent evidence in the record. The role of this court is limited to a determination of whether the finding of the Commission is manifestly against the weight of the evidence. (*Overland Construction Co.* v. *Industrial Com.*, 37 Ill.2d 525.) The finding here was certainly not against such manifest weight and will not be disturbed.

The petitioner had the burden of establishing not only the existence of a disabling disease, but also a direct causal connection between her husband's disease and his conditions of employment. (*Rockford Transit Corp.* v. *Industrial Com.*, 38 Ill. 2d 111; *Byrd* v. *Industrial Com.*, 33 Ill.2d 115.) It is undisputed that Frank Lewis had been frequently exposed to dust and chemical irritants in his employment, and that he had emphysema. However, the petitioner's medical testimony was inconclusive and even conflicting. Since petitioner's medical experts never had examined the decedent, they would express no opinion as to whether his conditions of employment proximately caused his emphysema. Hypothetically, Dr. Billings testified that the decedent's conditions of work could contribute to and cause irritation of an emphysematous condition. On the other hand, Dr. Lamb stated that it is not yet known whether the conditions to which the decedent was exposed in his employment can cause emphysema. Also, Dr. Lamb was unsure whether the decedent's conditions of employment would aggravate an already existing case of emphysema.

Significantly, this court recently held that a mere showing that one's conditions of employment aggravate a pre-existing emphysematous condition thus contributing to disablement, or hasten the development of the disease, is not

466

sufficient to support an award of compensation. *Rockford Transit Corp.* v. *Industrial Com.*, 38 Ill.2d 111.

The petitioner relies heavily on our decision in *Allis-Chalmers Manufacturing Co.* v. *Industrial Com.*, 33 Ill.2d 268, to sustain her position. Therein we determined that a compensable occupational disease will be deemed to exist under the statute presently concerned where there is a showing both that a disabling disease arose out of and in the course of employment, and that the employee contracted the disease, "due to exposure to hazards of a peculiar or unusual condition of work in a greater degree and in a different manner than the public generally * * *." (33 Ill.2d at 271.) However, it cannot be said that the petitioner made such a showing here. At best the evidence suggests only a possibility that her husband's employment was the disease's proximate cause. But, a mere possibility that an individual may have become afflicted with a disease in the course of his employment is insufficient to warrant an award of compensation. *Byrd* v. *Industrial Com.*, 33 Ill.2d 115; *City of Chicago* v. *Industrial Com.*, 403 Ill. 105.

The petitioner's evidence does not persuade. We deem that the finding below denying petitioner's claim for compensation is not contrary to the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Madison County, confirming the decision of the Industrial Commission, is affirmed.

*Judgment affirmed.*