ESTELLE PAYNE, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(General Steel Industries, Inc., Appellee.)

*Opinion filed June 2, 1975.*

Calvo, Mateyka & Hill, of Granite City, for appellant.

Keefe and De Pauli, of East St. Louis, for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

The claimant, Estelle Payne, under the Workmen's Occupational Diseases Act, filed an application for adjustment of claim with the Industrial Commission against her employer, General Steel Industries, Inc., alleging total disability as a result of her exposure to an occupational disease hazard. (Ill. Rev. Stat. 1973, ch. 48, par.

172.36(e).) After a hearing before the arbitrator, her claim was denied. The Industrial Commission confirmed the arbitrator's decision, and the circuit court of Madison County affirmed the finding of the Commission. This is a direct appeal by the claimant under our Rule 302(a)(4).

In July 1970, Estelle Payne had been employed by General Steel Industries as a welder for 27 years. She testified at the hearing before the arbitrator that her duties as a welder included repairing cracks or other defects in castings and that in her work she was exposed to concentrations of fumes and dust. She said that she worked in a building about a block and a half long and a quarter of a block or more wide. She described the ceiling as being far enough from the floor to allow the operation of a number of overhead cranes. While there were windows on the roof, she stated that they had not been useable for the preceding six years. About four years prior to her leaving her employment with the respondent in July 1970 she testified that she began to have breathing difficulties. She then received and has continued to receive injection treatments from Dr. H. A. Evans, a general practitioner. She stated that she has been receiving Social Security disability benefits, and that she has physically been unable to work since July 1970. She tires easily, she testified, breathes with difficulty, and her chest hurts.

Dr. H. A. Evans, the claimant's physician, stated that he had treated her as a patient about 300 times since September 1965. Almost all of her visits concerned what he had diagnosed as tracheal bronchitis, upper respiratory infections and emphysema. He stated that he at one time had been employed as a welder and that he had extensive experience with this type of illness. While he had never told the claimant to quit her employment, he said, he had advised her that there was no doubt that her employment was aggravating her condition. Dr. Evans had prescribed antibiotics and steroids to assist the claimant in breathing, but she had begun to develop, he said, allergic reactions to

many of the antibiotics. He testified he had never given the claimant an X-ray examination or given her any pulmonary function examinations, but he stated it was his opinion that the claimant had permanent lung damage and that she will continue to have the breathing and other difficulties of which she complained.

Dr. Herbert B. Zimmerman, an internist who specializes in cardiac and pulmonary diseases, testified for the claimant. He said that he had first examined her on July 8, 1969, when she complained of shortness of breath and a cough. He performed pulmonary function studies which revealed normal ventilation and some decrease in the arterial $O_2$ saturation, which he felt was a result of acute infections. After the claimant was treated with antibiotics and instructed in intermittent positive pressure breathing she showed improvement.

Dr. Zimmerman testified that his diagnosis was recurrent bronchitis due either to some allergic phenomena or some external irritant. After observing her for a period of time and noting that her condition improved upon leaving work, he testified that he had concluded that she suffered from an allergic bronchitis precipitated by her occupational environment. Further, he stated that in his opinion the claimant, in January 1970, had "welder's fever," which is a reaction to the fumes in welding and which manifests itself in fever and aches. The only treatment for this "fever" is removal of the patient from the source of irritation. The claimant's breathing has improved since she stopped working, and he suggested to her that she not return to work. Additional pulmonary studies done in October 1970 were within normal limits. At this time the claimant was exhibiting no pulmonary symptoms, and he was not prescribing any specific medication. Dr. Zimmerman described her as a hyperactive person who responds to allergents in her environment. Both Dr. Zimmerman and Dr. Evans stated that bronchitis is a disease common to all, that it is an ordinary disease of life.

Dr. Martin W. Davis, a specialist in internal medicine, testified for the respondent that he examined the claimant in September 1970. The examination revealed, he testified, essentially normal lungs, fairly good expiration and inspiration for her age, and calcified lymph nodes in the lung due to a chronic infection possibly dating to childhood. A pulmonary function test revealed normal ventilatory functions. It was his conclusion that while the claimant does have some bronchitis, she does not need any treatment, and he believed she could work as a welder. There was some evidence of emphysema which would be associated with bronchitis and a lung capacity which is somewhat suggestive of metal fume fever.

To recover under the Workmen's Occupational Diseases Act a claimant must establish the existence of a disabling disease and a direct causal connection between the disease and the conditions of employment. (*Rockford Transit Corp. v. Industrial Com.*, 38 Ill.2d 111.) The record does not support the claim of Mrs. Payne that she is disabled. Dr. Davis, who testified for the respondent, stated that she was not suffering from any disability when he examined her in September 1970. Dr. Zimmerman, who testified for the claimant, stated that the results of pulmonary function tests performed on the claimant in July 1969 and October 1970 were normal.

The resolution of questions of fact, including questions as to the nature and extent of disability and as to causation, is primarily for the Industrial Commission. (*General Steel Industries v. Industrial Com.*, 49 Ill.2d 552.) We cannot substitute our judgment for that of the Commission's (*Allis-Chalmers Manufacturing Co. v. Industrial Com.*, 33 Ill.2d 268) unless its finding is contrary to the manifest weight of the evidence. *(Rysdon Products Co. v. Industrial Com.*, 34 Ill.2d 326, 330; *Leason v. Industrial Com.*, 55 Ill.2d 486, 493.) Clearly the finding here of the Commission was not.

For the reasons given, the judgment of the circuit

court is affirmed.

*Judgment affirmed.*